IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | No. 24-38 |
| | : | |
| ANDRE WILLIAMS | : | |
| | : | |

**MEMORANDUM**

**KENNEY, J.**                                                                                                    **October 23, 2024**

On August 12, 2024, Defendant Andre Williams filed a Motion to Suppress the firearm and eight rounds of ammunition recovered from his person on October 18, 2023. ECF No. 26. On October 10, 2024, the parties appeared before the Court for an in-person hearing on the Motion. ECF No. 49. At the hearing, Police Officer Jarrett Ross, Sergeant William Phillips, and Police Officer Matthew Stasik each testified as to their recollection of events on October 18, 2023. Each witness was subject to both direct and cross examination, and each witness testified credibly. At the conclusion of the hearing, the Court denied Defendant's Motion.

The Court writes now for the parties to deliver its Findings of Fact and Conclusions of Law on the relevant facts and issues raised by the Motion and at the hearing.

**I.      FINDINGS OF FACT**

1. On October 18, 2023, Philadelphia Police Officer Ross and then-Officer (now Sergeant) Phillips observed Defendant Williams operating a black Harley Davidson motorcycle in the 39th District, which is the northwest region of Philadelphia.

2. Officer Ross and Sergeant Phillips have years of experience patrolling the 39th District.

3. Based upon Officer Ross's and Sergeant Phillips's experience, the 39th District is a high crime area.

4. As Defendant rode his motorcycle past Officer Ross and Sergeant Phillips, Officer Ross and Sergeant Phillips observed that it did not have a license plate.

5. Officer Ross and Sergeant Phillips began following Defendant in a marked patrol vehicle, but could not turn on their lights to stop him while he remained on a motorcycle pursuant to Philadelphia police protocol.

6. As Officer Ross and Sergeant Phillips followed Defendant and continued to observe him, Defendant ran two stop signs.

7. Defendant then parked the motorcycle in a bus lane, which is a "no parking" area, dismounted it, and began crossing the street to approach a red car.

8. After Defendant dismounted the motorcycle, Officer Ross and Sergeant Phillips turned on the lights of their marked patrol vehicle.

9. As Defendant was crossing the street, Officer Ross saw Defendant look at the police patrol car.

10. Just as Defendant began to approach the red car, Officer Ross got out of his patrol car.

11. Defendant spoke to the driver of the red car, and then entered the passenger side of the red car.

12. The red car began driving away, and Officer Ross re-entered his police patrol car.

13. Both Officer Ross and Sergeant Phillips then continued their investigation by following the red car in their marked patrol vehicle with the lights activated.

14. Once the red car reached the intersection of 17th Street and Indiana Avenue with Officer Ross and Sergeant Phillips following in their car, the passenger door of the red car flung open.

15. Defendant exited the red car and began running.

16. Sergeant Phillips pulled his vehicle around in an attempt to cut off Defendant.

17. Defendant then turned around and began running towards his motorcycle.

18. Officer Ross, in full police uniform, exited his patrol vehicle and chased Defendant on foot with his taser in his hand.

19. As Defendant jumped on the motorcycle with Officer Ross running towards him, Officer Ross yelled at Defendant to stop.

20. Once Officer Ross reached Defendant, Officer Ross yelled that he would deploy his taser.

21. Officer Ross then tackled Defendant on the motorcycle, and both Officer Ross and Defendant fell to the ground.

22. As Defendant struggled with Officer Ross on the ground, Officer Ross felt what he thought were Defendant's teeth on his arm.

23. As he pulled his arm back from Defendant with his left hand and finger on the taser, Officer Ross deployed his taser, which struck Defendant's head.

24. As Officer Ross was attempting to place Defendant in handcuffs, Defendant appeared to resist being placed in handcuffs.

25. Sergeant Phillips then arrived on the scene and helped place Defendant in handcuffs.

26. Police Officer Stasik and Police Officer Nieves then also appeared on the scene.

27. After Defendant was in handcuffs, Officer Ross conducted a brief safety pat-down of Defendant to check for weapons, but could not finish as Defendant began complaining that he could not breathe.

28. To make sure Defendant could breathe, Officer Ross began rolling Defendant over.

29. As Officer Ross rolled him over, Officer Stasik noticed the handle of a black firearm sticking out of Defendant's right pants pocket.

30. Officer Stasik then recovered the firearm, which was loaded with eight rounds of live ammunition.

31. Officer Stasik then conducted a pat-down of Defendant to check for any additional weapons and recovered Defendant's wallet out of Defendant's right pants pocket.

32. After running the motorcycle's information through a police database, the police officers determined that the motorcycle was reported stolen.

33. Officer Stasik observed that the motorcycle had loose wiring near the handlebar area.

34. Defendant was transported to a nearby hospital for treatment, as he was bleeding from his head.

35. Later, Officer Ross determined that Defendant was a previously convicted felon and did not have a license to carry a firearm.

## II.  CONCLUSIONS OF LAW

1. When Officer Ross tackled Defendant as Defendant jumped on his motorcycle, Officer Ross conducted a lawful *Terry* stop.

2. The totality of the circumstances—that (1) Defendant was riding a motorcycle without a license plate in a high crime area; (2) Defendant ran two stop signs while riding the motorcycle; (3) Defendant left the motorcycle unattended in a bus lane, which is a "no parking" zone; (4) Defendant crossed the street and got into a red car that drove away from the police officers, even as they followed with their lights on; and (5) Defendant attempted to evade the police officers by fleeing from Officer Ross on foot, ignoring Officer Ross's command to stop, and then jumping on the motorcycle—support a reasonable suspicion on the part of the police officers that justified their decision to investigate Defendant. *See, e.g.*, *United States v. Steed*, 395 F. App'x 850, 851–53 (3d Cir. 2010) (finding that "the

totality of circumstances support[s] a reasonable suspicion on the part of the police officers that justified their efforts to investigate" given that the defendant was in a high crime area and attempted to flee from a police officer on foot, among other things).

3. Officer Ross's actions were reasonable to effectuate the *Terry* stop. As Defendant fled from Officer Ross on foot, Officer Ross chased Defendant and commanded Defendant to stop running. After Officer Ross observed Defendant jump on his motorcycle, Officer Ross tackled Defendant to stop him. As Officer Ross attempted to apprehend Defendant and conduct an investigation of Defendant, Officer Ross felt Defendant's teeth on his arm, leading Officer Ross to deploy his non-lethal taser and handcuff Defendant. *See United States v. Hensley*, 469 U.S. 221, 235 (1985) (holding that if officers determine that an investigatory stop is warranted, they may then "take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop").

4. None of these actions converted the *Terry* stop into a *de facto* arrest. *See, e.g.*, *United States v. Bonner*, 363 F.3d 213, 215, 217–18 (3d Cir. 2004) (holding that "[i]n effectuating a valid [*Terry*] stop, police officers are allowed to use a reasonable amount of force," such as tackling); *United States v. Starkey*, No. 13-654-1, 2014 WL 5810659, *1–3, *7 (E.D. Pa. Nov. 4, 2014) (holding that pursuit, tackling, tazing, and attempting to handcuff were all reasonable to effectuate a *Terry* stop, and that the *Terry* stop did not become a *de facto* arrest).

5. Upon his arrival on the scene, Officer Stasik observed the firearm in plain view, as it was sticking out of Defendant's right pants pocket. Officer Stasik then lawfully seized that evidence. *See Horton v. California*, 496 U.S. 128, 136–37 (1990) (explaining that under

the "plain view" doctrine, if police are lawfully in a position from which they view an object and its incriminating character is immediately apparent, they may seize the object without a warrant).

6. After determining that (1) the motorcycle was stolen and had loose wiring hanging out underneath the handlebar area, (2) Defendant was carrying a firearm, and (3) Defendant was a previously convicted felon, the police officers had probable cause to arrest Defendant.

7. In the alternative, the firearm and ammunition are subject to the inevitable discovery doctrine. *See Nix v. Williams*, 467 U.S. 431, 444 (1984) (holding that under the inevitable discovery doctrine, "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . then the deterrence rationale has so little basis that the evidence should be received").

8. Had the firearm not been in plain view, upon Defendant's arrest, a police officer would have lawfully patted down the defendant for an inventory search conducted pursuant to Philadelphia Police Department policy, and found the firearm and its ammunition. *Cf. United States v. McMillan*, 227 F. Supp. 3d 432, 443 (W.D. Pa. 2017) (finding that "the United States has established by a preponderance of the evidence that the heroin would inevitably have been discovered via the inventory search conducted pursuant to [relevant Pittsburgh Bureau of Police procedures]," and therefore, the heroin should not be suppressed).

9. Therefore, even if the firearm had not been in plain view, it would have been inevitably discovered and lawfully seized.

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress (ECF No. 26) is denied. An appropriate order will follow.

**BY THE COURT:**

/s/ Chad F. Kenney

**CHAD F. KENNEY, JUDGE**
